In the Matter of the Estate of THOMAS A. DRISCOLL, Deceased.

Surrogate's Court, Bronx County, July 13, 1936.

*John J. Ryan*, for the appellant.

*Edgar Hirschberg* [*John J. Fay* of counsel], for the State Tax Commission.

HENDERSON, S. The petitioning widow appeals from the appraisement and the *pro forma* order thereon fixing the estate tax herein upon three grounds: (1) The appraiser's disallowance of funeral and administration expenses and debts as deductions; (2) the inclusion in the gross estate of two parcels of realty held as tenants by the entirety at their full values instead of at half the value of each by reason of their purchase with funds of which one-half belonged to the widow; (3) the inclusion in the gross estate of one of said parcels held as tenants by the entirety since October 9, 1911.

The appraiser reported that the gross estate consisted entirely of real and personal property jointly owned by the decedent and his widow and evaluated each item at its entire value. He valued the claimed deductions in the amounts respectively alleged by the widow, but allowed no deduction therefor.

Section 249-s of the Tax Law arbitrarily provides for the deduction of " such amounts (a) for funeral expenses, (b) for administration expenses, (c) for claims against the estate, * * * as are allowed by the laws of this State." There is no true gross estate and none of the claimed deductions can be paid out of the decedent's estate. That statute does not limit these deductions to those items which are or may be paid by the estate. The only presently material limitations with respect to them is that they be such as are allowed by the laws of this State; that each is a valid claim in an amount that would be allowed in a legal proceeding or action therefor in this State. Frequently claims against insolvent estates are and must be allowed by the surrogates in the full amounts claimed although complete satisfaction thereof can never be made. The validity and amount of each item has been approved by the appraiser, but he erred in not deducting them from the reported gross estate. (*Matter of Suderov*, 156 Misc. 661; *Matter of Lederer*, 158 id. 796.)

The first ground of appeal is sustained.

In the notice of appeal the above-mentioned third ground appears only by implication in the petitioner-appellant's ground numbered " 2," but it is pressed in the brief submitted on her behalf.

The realty in question was purchased in 1911 and the decision in *Matter of Lyon* (233 N. Y. 208) would control were it not for the fact that the decedent died after article 10-C of the Tax Law became effective. This enactment, known as the Estate Tax Law, went into effect on September 1, 1930. It superseded, as to estates of persons dying after August 31, 1930, the Transfer Tax Law (Tax Law, art. 10), which was and still is applicable to transfers by decedents dying prior to September 1, 1930. The new Estate Tax Law was enacted with an intent to achieve, as far as practicable, uniformity of taxation of decedents' estates under our statutes with such taxation under the laws of the United States. The new article was expressly retroactive in its application to estates by the entirety " created * * * existing * * * before or after " its enactment. (Tax Law, § 249-r, subds. 5 and 10.) The appraiser was correct in including this estate by the entirety in the gross estate. (*Matter of Weiden*, 263 N. Y. 107.)

The third ground of appeal is dismissed, and the appraisement and order are affirmed in so far as affected by this particular ground of appeal.

As to the second ground of appeal, the only evidence returned with the appraiser's report is the petitioner's verified return and schedules for the tax appraisal together with supporting appraisals of the realty and her affidavit alleging certain transactions by the decedent and his wife, the petitioner, relating to four parcels of realty and several mortgages. There seems to have been no controversy over the facts alleged therein and they are not now denied.

In 1897 they purchased parcel A, a one-family house, for $4,500. Part of the purchase price was paid by their assumption, jointly and severally, of a mortgage thereon for $2,500. In 1905 they purchased the adjoining parcel B, a vacant lot, and both mortgaged these combined parcels for $3,500. The $2,500 mortgage was then paid off. In 1911 they exchanged parcels A and B, subject to the $3,500 mortgage, for a purchase-money mortgage of $2,000 thereon in both their names and parcel C (now in question), an apartment house, subject to two mortgages, one for $26,000 and the other for $5,000. The net rentals from parcel C were deposited from time to time in various banks in their joint names.

In 1919 the $5,000 mortgage on parcel C was paid off from the joint net rental profits from parcel C. In 1923 they purchased parcel D (now in question), a two-family house, subject to a mortgage for $7,000, from the joint net rental profits of parcel C. In 1928 the $7,000 mortgage on parcel D was paid off. In 1931 the $26,000 mortgage on parcel C was paid off. Both mortgages were satisfied out of the joint net rental profits of parcel C. When each deed was taken the decedent and his widow were husband and wife and each grant was to them as " Thomas A. Driscoll and Theresa Driscoll, his wife." Hence they held parcels A and B up to their joint alienation thereof and parcels C and D up to the decedent's death, as tenants by the entirety. Parcel C yielded substantial net profits during the years of the World war and also during the years 1920 to 1931 inclusive.

The decedent " was a fireman and engineer of New York city fire department until he retired on pension in 1918 and was later employed by the Federal Reserve Bank until he resigned in 1923. He had no other income except his share of the joint net rental profits of the real estate and his salary and pension."

There is no evidence as to the amount that the wife contributed towards their purchase of parcels A and B, nor as to her continued liability, if any, upon the $3,500 mortgage. That question, however, is immaterial as these parcels form no part of the taxable gross estate and the grants thereof to the husband and wife gave the wife an estate by the entirety in each parcel of which she could not be deprived without her consent even if her husband paid all

the consideration. (*Boehringer* v. *Schmid*, 254 N. Y. 355; *Shapiro* v. *Shapiro*, 208 App. Div. 325.) Since the statutory abolition of the *jus uxoris* and *jus mariti* by the enactments of the Married Women's Acts, a husband has no superior rights in estates by the entirety. While the survivorship was in abeyance during their joint lives and their estates by the entirety remained unchanged by any act of either, the decedent and his wife had equal rights therein in the nature of tenants in common. The wife was entitled to one-half the net rents and half the proceeds of any sale by them. (*Hiles* v. *Fisher*, 144 N. Y. 306, 314; *Matter of Kilcourse*, 244 App. Div. 755; *Shapiro* v. *Shapiro, supra; Mastrofrancisco* v. *Mohawk Gas Co., Inc.*, 201 App. Div. 586.) Hence it follows that when these parcels were exchanged in 1911 for parcel C, the wife furnished one-half of the consideration for the then equity in parcel C. As a tenant by the entirety, she was entitled to one-half the net rents of parcel C. Therefore, she owned one-half of the net rentals deposited in the joint bank accounts. By the application of these joint net rentals to the satisfaction of the mortgages upon parcel C, she furnished one-half of the consideration for the increased equity in parcel C. Only one-half of the value of parcel C should have been included in the taxable gross estate because one-half thereof is proportionate to the consideration therefor furnished by the widow. (Tax Law, § 249-r, subd. 5.)

Parcel D was purchased and the $7,000 mortgage thereon was satisfied out of the joint net rentals of parcel C. Hence, only one-half of the value of parcel D should have been included in the reported gross taxable estate.

The appraiser erred in reporting parcels C and D at their full values for the reasons above noted. The second ground of appeal is sustained.

The correct value of the taxable gross estate is $25,487.71, from which the sum of $2,705.82 is lawfully deductible.

The *pro forma* order is modified accordingly, and as so modified, affirmed.

Settle order.