HENRIETTA LEBOWITZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lebowitz v. Commissioner
Docket No. 9245-75.
United States Tax Court
T.C. Memo 1978-155; 1978 Tax Ct. Memo LEXIS 360; 37 T.C.M. (CCH) 687; T.C.M. (RIA) 780155; April 20, 1978, Filed *362 Henrietta Lebowitz, pro se. Joan Ronder Domike, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined deficiencies in petitioner's Federal income taxes as follows: Income tax
Sec. 6651(a) [1]
Sec. 6653(a)
Sec. 6654
deficiency
additions to
additions
additions Year
tax
to tax
to tax
1973
$ 731.00
$183.00
$37.00
$23.39
1974
1,207.00
302.00
60.00
38.62
1975
697.00
174.25
34.85
22.32
The following issues remain for our decision: (1) Whether petitioner received alimony income during 1973, 1974, and 1975; (2) Whether petitioner had net rental income in 1973 and 1974; (3) Whether petitioner's taxes should be computed using the rates for unmarried individuals, or else those for married individuals filing separate returns; and (4) Whether petitioner is liable for additions to tax for failure to file timely tax returns without reasonable cause, for negligence or intentional disregard of rules and regulations *363 with respect to any underpayment of her income taxes, and for underpayment of estimated tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner Henrietta Lebowitz (petitioner or Henrietta) resided in Glens Falls, New York, on the date the petition was filed herein. Petitioner did not file Federal income tax returns for the taxable years 1973, 1974, and 1975. During 1973 through 1975, petitioner was legally married to I. Charles Lebowitz (Charles). They were not legally separated but were living apart during such period. In June 1972, Charles instituted an action for divorce against petitioner in the Supreme Court of the State of New York, County of Warren. On June 18, 1973, on a motion for temporary alimony brought on behalf of Henrietta in the divorce action, Supreme Court Justice Edmund L. Shea handed down his decision (June 18, 1973, decision) that Charles should pay Henrietta the total sum of $1,200 as her support for the period of April 1973 through June 1973, and that Charles should pay Henrietta $125 per week as temporary alimony commencing on July 1, 1973, until otherwise directed by the court. Attorney Harold W. Katz (Katz) *364 represented Henrietta in connection with the temporary alimony award and a copy of the June 18, 1973, decision was sent to Katz. On February 11, 1977, Justice Shea entered an order pendente lite in the divorce action nunc pro tunc as of June 18, 1973, awarding Henrietta payments in accordance with his June 18, 1973, decision. Pursuant to the June 18, 1973, decision of Justice Shea, Charles made payments to Henrietta as follows: Year
Amount
1973
$4,575
1974
6,500
1975
6,500
During the years 1973 and 1974, petitioner and Charles owned as tenants by the entirety a two-family duplex located in Glens Falls, New York. Petitioner lived in half of the duplex and rented the other half. Charles did not live in such duplex during any part of 1973, 1974, or 1975. None of the rental income from the duplex was received by Charles and he did not pay any of the expenses of the duplex. Charles permitted petitioner to rent half of the duplex and he did not claim any of the rent. The income and expenses of the rental portion of the duplex were as follows: 1973
1974
Gross rent
$1,740
$1,815
Less: Expenses
729
729
Net rent
$1,011
$1,086
*365 Petitioner did not file a joint return with Charles for any of the years at issue. For each of the years at issue, Charles filed a separate return on which he itemized his personal deductions. During 1973 through 1975, petitioner and Charles' son Neil resided in the Glens Falls duplex for five months each year and attended the University of Wisconsin for the remainder of each year. Charles provided over half of Neil's support for each of the years at issue. For the years 1973 and 1974, respondent computed petitioner's income tax deficiency using the rates for "married individuals filing separate returns." For 1975, respondent computed petitioner's income tax deficiency using the "unmarried individual" rates. In his amended answer, respondent asserted that petitioner's correct filing status for 1975 was that of "married individuals filing separate returns" and he increased the 1975 deficiencies to the following amounts: Income tax
$812.00
Section 6651(a) addition to tax
203.00
Section 6653(a) addition to tax
40.60
Section 6654 addition to tax
26.01
In 1975, petitioner had itemized deductions in the amount of $1,059.16. Petitioner did not file a declaration *366 of estimated tax or pay any estimated tax for the taxable years 1973, 1974, or 1975. Petitioner did not intend to either sign a joint return or file separate returns for the years 1973, 1974, and 1975. OPINION Respondent asserts that the amounts which petitioner received from Charles during the years at issue are properly includable in her gross income pursuant to section 71(a)(3). Such section states: (3) Decree for support.--If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. Section 71(a)(3) applies to include in the wife's income payments made by the husband if (1) the husband and wife are separated, (2) the payments were periodic, (3) the payments were received under a decree entered after March 1, 1954, requiring the husband to make such payments for support and maintenance; and (4) the husband and wife *367 did not file a joint return for the years in issue. We have found as facts that petitioner and Charles were "separated and living apart" during the period in question, section 1.71-1(b)(3)(i), Income Tax Regs., and that they did not file joint returns for the years in question. Petitioner's argument that Charles lived with her "by his own admission" because he used her address for mailing and voters' registration purposes must be rejected in light of Charles' testimony that he did not live with her during such period and the fact that petitioner was only able to testify unequivocally that Charles was in her house once during the entire relevant period. Petitioner received payments from Charles in the amounts of $4,575, $6,500, and $6,500 for 1973, 1974, and 1975, respectively. Except for a $1,200 payment for arrearages, Charles paid these amounts as temporary alimony to petitioner in $125 weekly payments which were to continue until otherwise directed by the court. The court did not specify Charles' obligation as a principal sum payable in less than 10 years but retained jurisdiction to change the amount of or discontinue the weekly payments so that the $125 weekly payments *368 are "periodic payments" within the meaning of section 71(a)(3). Sec. 1.71-1(d)(1), Income Tax Regs. Since the $1,200 payment made by Charles to petitioner in 1973 represented the aggregate of various "periodic payments" which the court retroactively determined Charles to owe for April, May, and June of 1973, under his marital obligation to support petitioner, such amount is also includable in petitioner's income as "periodic payments" if the other requirements of section 71(a)(3) are met. Capodanno v. Commissioner, 69 T.C. 638 (Jan. 31, 1978). The final requirement for section 71(a)(3) to apply is that Charles made the payments to Henrietta under a decree requiring him to make such payments for her support and maintenance. Charles made the payments to petitioner during the period in question on the basis of Justice Shea's decision of June 18, 1973. An order in accordance with the June 18 1973, decision was not entered until February 11, 1977, when an order was entered nunc pro tunc as of June 18, 1973. Such order is in complete accord with Justice Shea's June 18, 1973, decision and does not attempt to amend any prior order or decree of the court. Therefore, *369 the nunc pro tunc order is effective as of June 18, 1973, for purposes of section 71(a)(3), Newman v. Commissioner, 68 T.C. 494, 501 (1977), so that Charles made the payments to Henrietta during the years in question under a decree requiring him to make such payments for her support and maintenance. Since the requirements of section 71(a)(3) have been met, we must hold that the amounts which petitioner received from Charles during the years in issue are includable in her income. We believe petitioner's testimony that she paid so little attention to the divorce proceedings that she did not know exactly what it was that her husband was paying her but only that she was gettiing too little, but these circumstances regrettablly do not alter the fact that Charles' payments to her were alimony pendente lite and taxable to her under section 71(a)(3). The parties have stipulated that petitioner received gross rentals from the rented half of the Glens Falls duplex in the amounts of $1,740 and $1,815 during 1973 and 1974, respectively. Respondent has determined that petitioner incurred expenses allocable to such rental income in the amount of $729 for each year. *370 Petitioner introduced no evidence that her rental expenses were greater than allowed by respondent. Under New York law, if property is held by husband and wife as tenants by the entireties, then each is entitled to one-half of the rents and profits from such property. Kraus v. Huelsman, 52 Misc. 2d 807, 276 N.Y.S. 2d 976 (Sup. Ct. 1967), affd. 287 N.Y.S. 2d 365 (App. Div. 1968); Hiles v. Fisher,144 N.Y. 306, 39 N.E. 337 (1895). [2] Where, under state law, each of the co-owners is entitled to share equally in the income from jointly-held property, then one-half of such income is taxable to each. [3]Sandberg v. Commissioner, 8 T.C. 423 (1947); Greene v. Commissioner, 7 T.C. 142 (1946). Since petitioner and Charles were entitled to share equally the net income from the duplex, it is immaterial for tax purposes that the income was received by petitioner alone because Charles waived his right to receive his share. Lucas v. Earl, 281 U.S. 111 (1930); Morgan v. Finnegan, 182 F. 2d 649 (8th Cir. 1950); Greene v. Commissioner, supra at 152. Accordingly, *371 we hold that only half of the net rental income from the duplex is includable in petitioner's income for 1973 and 1974. In his amended answer, respondent first asserted that petitioner's tax liability for 1975 should be computed under section 1(d) for "married individuals filing separate returns." Petitioner did not file a joint return with Charles for any of the years in issue, she was not legally separated from Charles during such years, and she was not entitled to a dependency exemption during those years for her son under sections 151 and 152. Accordingly, we hold that respondent has met his burden of proving that petitioner's proper filing status for 1975 is that of "married individuals filing separate returns." Secs. 1(d) and 143(a)(2) and (b). Likewise, *372 for 1973 and 1974, respondent has correctly computed her tax using the section 1(d) rates. The parties have stipulated that petitioner had itemized deductions during 1975 totaling $1,059.16. Although such amount is less than the standard deduction under section 141, petitioner may not use the standard deduction for 1975 because Charles itemized his deductions on his separate return. Sec. 142(a). Petitioner did not file income tax returns for the years 1973, 1974, and 1975. Prior to 1973, she had filed joint returns with Charles but she refused to sign joint returns for the years in issue. Even though petitioner was unaware of the fact that Charles' weekly payments constituted alimony income to her, we do not believe such fact establishes reasonable cause for her failure to file returns because the tax issues involved are not complex. Dillin v. Commissioner, 56 T.C. 228, 248 (1971); Shomaker v. Commissioner, 38 T.C. 192, 202 (1962). Petitioner knew that she was regularly receiving payments from Charles, she knew that she was no longer filing joint returns with Charles; and one of her sons asked her in May 1974, if she had paid any tax. These *373 facts should have at least caused her to seek professional advice whether she should file tax returns. Shomaker v. Commissioner, supra.
Moreover, her testimony indicates that she had no intention of filing income tax returns even if required to do so because she was unhappy with the arrangements between her husband and herself. Accordingly, we hold that petitioner is liable for additions to tax under section 6651(a) for the taxable years 1973, 1974, and 1975. For the same reasons, we also hold that petitioner's underpayments of tax for the years in issue were due to negligence or intentional disregard of rules and regulations so that she is liable for additions to tax pursuant to section 6653(a) for the years in issue. Petitioner did not file a declaration of estimated tax or pay any estimated tax for the years herein. Petitioner should have reasonably expected her alimony and rental income to exceed $500 and her estimated tax to exceed $100, so that she was required to file a declaration of estimated tax, section 6015(a)(2), and pay estimated tax installments. Sec. 6153(a). Accordingly, we hold that petitioner is liable for additions to tax pursuant *374 to section 6654. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. And see Colabella v. Commissioner, T. C. Memo. 1958-136↩. 3. In the instant case, we cannot find that the tenancy by the entirety of the duplex was a sham. Cf. Greene v. Commissioner, 7 T.C. 142↩ (1946). Although Charles waived his right to his share of the income for the years in issue, we do not believe that he intended to relinquish all his direct beneficial interest in the duplex.